2-2-1-1 Cynthia L. Marlini v. Canada Good morning, Your Honours. Ted Folkman for Cynthia Marlini. I'd like to reserve two minutes for rebuttal. You're going to have to speak up. Can you hear me? Up a bit. My name is Ted Folkman. I represent Cynthia Marlini. I'd like to reserve two minutes, please, for rebuttal. You may. Thank you. May it please the Court, this case is about the subject matter jurisdiction of the District Court. It is not about what Canada's obligations were or were not under Massachusetts law. It is not about what rights Ms. Marlini had or didn't have under Canadian law. And it is not about what Canada permissibly could or couldn't have done under Canadian law. Instead, it's just about whether the District Court had the power to decide the merits and to decide questions like those to the extent they bear on the merits. The question under the FSIA is whether Marlini's case is based on Canada's commercial activity and, in the alternative, whether it's a tort claim for personal injury, which no one disputes, and is not based on Canada's exercise of any discretionary function. In order to answer those questions, this Court has to decide what is the ground of the case, what is the case about. Now, we know from the Supreme Court cases like Nelson and Sachs that when an American claims a personal injury abroad and is sued by a foreign sovereign, the American plaintiff can't point to something incidental that happened in the United States and claim that that's the ground of the case as a way of avoiding the FSIA's ordinary rule of immunity. So, for example, in Nelson, the plaintiff happened to have been hired in the United States but then worked in Saudi Arabia, was imprisoned, arrested, and tortured in Saudi Arabia. The case was obviously about what happened in Saudi Arabia, and the mere fact, the incidental fact, about the location of the hire was not the ground. Or in Sachs, where the plaintiff bought a train ticket in the United States but then was injured in a catastrophic train accident in Austria. The claim was obviously about the train accident, not about the purchase of the ticket. But we also know from cases like Holden that when the shoe is on the other foot and the gist of the case really does happen in the United States, the foreign sovereign cannot point to something that happened abroad that was incidental and claim that that was the ground of the case as a way of avoiding, for example, the commercial activity exception. In Holden, the Canadian government decided to close a large consulate, reopen a small consulate, and hire some but not all of its workers back. One of the workers had a claim for age and sex discrimination, and what the court held was that the case was, of course, about the discrimination, not about Canada's decision-making process. What Canada says in this case is that its claim, or that our claim, is really based on Canada's decision made in Canada not to follow Massachusetts law with respect to workers' compensation. And I will propose to you the following simple test to show why that can't be true. Suppose Canada had made a policy and said we want to comply with the Massachusetts statute, but that for some bureaucratic reason of inadvertence or some other reason, it simply had failed to buy the insurance policy. Well, Holden's claim would be exactly the same as it is, because as Canada points out in its papers, this is a strict liability statute. We don't have to show that it intentionally failed to buy insurance. We don't have to show that it was willful, that it was reckless, or even that it was negligent. It's just the fact that it didn't have insurance that matters. Now, what about Mohini's employment? That is critical to her case, because under Massachusetts workers' compensation law, only an employee has a claim. If she had been a visitor to the consulate, she would have had no claim. If she had been in an independent contractor, she would have had no claim. I'm trying to follow the logic of this argument. The argument that the gravamen of the complaint is both the decision not to insure and the decision of the liability rising from tripping over the wire. You start off by having us focus on this question of what is the gravamen of the case. I've lost the thread of what you're now saying the gravamen of the case is. What is the gravamen of the case is her employment here in Massachusetts. We have alternative arguments if you were to decide that the gravamen has to do with the insurance. But the gravamen of her case isn't just the employment. Well, to decide what the gravamen is under Massachusetts... I see. You're saying the tripping that follows from the employment. Aren't you saying that it's her employment, and it may arguably also be the status where Canada has not effectively opted in, but that status is not dependent on Canada having necessarily made a sovereign decision. It could have arised in all sorts of different ways, including the one you outlined, which was inadvertence. That's correct. Just so I'm clear on that, that means you win no matter what the gravamen of the case is. Because the only two possibilities that have been posited by Canada are that the gravamen of the case is the decision not to insure or the employment. And you say if you look at it through the lens of the employment, and that's the gravamen of the case, clearly she wins. But if you say, okay, actually the claim maybe is turning on the fact that they're not insured, you win too because that's a commercial decision. But you haven't made that second argument yet. That's correct. So on the second point, I would just point out the difference between saying that the case is about Canada's decision and that the case is about the failure to have insurance. And we cite some cases on this. So we cite, for example, the Rush v. Presbyterian case. This is a case where the Greek government failed to pay some American doctors after they provided health care that was provided under Greek law. The defense was, well, we're just administering the Greek health insurance program. But the nature of what they did was commercial. They didn't pay. So we don't get to that issue unless we think the fact of the insurance is relevant to the first question, which is what is the gravamen of the complaint. That's correct. And what we're asking you to do in the first instance is to decide that the gravamen is the employment or else the employment and the injury. But if you reach the question of how the insurance is. Just walk me through that. What is your argument as to how I'm supposed to decide that in this unusual setup under Massachusetts law, the gravamen of the complaint is the employment plus the injury rather than the fact that Canada does not have insurance? Well, because the employment is critical because it's sort of the sign-up on the case. Without employment, there is no case. So without them not having insurance, there's no case. That's correct. That's correct. So I don't, we don't need to show. That's what I'm saying. It sounds like what you're saying is in this case, maybe the gravamen of the complaint could be both. You don't have to decide in a case like that which one gets precedence because you win either way. But that's only true if the fact of not having insurance is itself a commercial decision. Correct. And the only way that I think that Canada could win under the analysis that we're suggesting is if you found that the gravamen was actually the decision, the policy decision not to have insurance. And that's exactly what we're attacking when we point to cases like that. Does Massachusetts law require companies to insure, or does it simply set up a regime that says you can insure with one of our registered insurers, you can self-insure under a prescribed program that meets our regulations, or you can do neither, in which case you're subject to strict liability and all the penalties that go with that. The statute, Your Honor, says that all employers must insure or self-insure. Now, in practice, of course, if you do neither of those things, then as you say, you're strictly liable. But the statutory scheme requires... But that then may cut against you, doesn't it? Because then it suggests that the commercial decisions are limited to insure or authorized self-insurance in order to comply with the law, and that it's a non-commercial... It would seem to be more of a non-commercial decision to decide, I'm not even going to apply it with the law. So private employers in Massachusetts fail to insure. And I don't think there's any question when they do that that they're acting commercially. It's an ordinary commercial omission. And it's no different than what Canada has done. The only degree to which it's different is that Canada has this gloss on it. It says we've made a sovereign decision. But, of course, if that's right, then a lot of the cases will come out the other way because the foreign sovereign would always be able to say we've made a decision and we're just applying our policy, rather than we're doing what private employers in the United States do or fail to do. Do we know why there aren't, like, hundreds and hundreds of these cases? I mean, there must be lots of employees who get injured at workplace in various consulates around the country. Is it because they're all covered by workers' compensation so we never hear about them? Or is it because they're all immune? Well, we know in Massachusetts, for example, and we cite this in the briefs below, that many of the consulates with offices here do comply with the Massachusetts statute and know that the province of Quebec itself has workers' compensation insurance. Now, you might want to look, for example, at Washington, D.C., or at New York, where the statutory scheme is different. My understanding is that in New York there's actually an exemption that applies to embassies and consulates there. I know you're over, but I just want to follow up because it's this last issue about whether the fact of insurance in a situation where you must be insured is a commercial activity, turns out to be a hard issue. One way of deciding the case would be to just decide it on the ground that the gravamen of the claim was the employment plus the injury. And I understand the logic of your argument that in this case the gravamen of the claim, but you may not have intended to make this argument. It's now on the table. It sounds like a good one. The gravamen of this claim might be both. There was employment plus injury, but the nature of this Massachusetts claim is such you also have to have it be that you were not insured. I'm not aware of any case that tells us when there's both what we're supposed to do because you could imagine a bunch of different options. You privilege the injury plus employment, and you say that's the real thing, and you turn away the other order. Is it evaluated as long as some of the case is based on the employment plus the injury, you treat it all as it's commercial? What are we supposed to do? I don't know of a case that has this quality. I don't know of a case either. The only thing I would say is that the only point we're insisting on is that you can't make the gravamen the policy decision abroad because that is... I'm saying if I thought that even the decision not to be insured or the fact that no insurance might not be a commercial decision, then if that were true, the only way you could win is if the gravamen of the claim was employment plus injury. I think we could win just by showing that the gravamen was employment and injury without talking about the insurance. That's right. So since the way the Massachusetts claim is written, being not insured is necessary to being able to bring the claim as a legal matter, how am I supposed to decide that the gravamen of the claim is only employment plus injury? Do you follow? I do, and I understand your point. I think it's a good point, and I would say you don't have to decide that for the reasons that you gave earlier, namely that you could say... Just one last time, if I thought I did have to decide it, what would be your proposal for a test that we would use to resolve a case like that? I think you would look at the line that Congress drew in the legislative history, and that's reflected in cases like Holden itself, like the Semye case and the El Haddad case. These are cases that involve low-level, clerical American workers who clearly are not civil servants. And what Congress was intending to do, and what the cases, the outcome cases show, is that folks in that category are treated as if they were the employees of any private employer, whereas if, for example, the Consul General of Canada were to make a similar claim, obviously he would fall on the other side of the line. So I think the way that you get there is to look at the nature of the employment of the person who is the plaintiff. And you get at Congress's intent that way. Thank you. Thank you. May it please the Court, John Cooney for the Government of Canada. Canada's position is that U.S. courts do not have jurisdiction over Donald's lawsuit. Under the Foreign Sovereign Immunities Act, Canada is presumptively immune from the jurisdiction of U.S. courts unless it can be shown that one of the exceptions to the Foreign Sovereign Immunities Act applies. Here, Appellant's suit is based upon Canada's sovereign action to self-insure and to apply its comprehensive workers' comp statute to its employees, rather than apply to the State of Massachusetts for an annual license for self-insurance under the MAS law. Suppose that Canada just decided we're going to use our minimum wage, lower minimum wage, rather than Massachusetts. Would that be a sovereign decision? Your Honor, we don't claim that Canada or any other country can simply assume a right to ignore the United States law. But what we do say here is that you have to look at the nature of the claim that they've presented to see why there is not a sovereign... But here, do you agree that we should construe Massachusetts law as effectively a mandate, subject to penalties if you don't comply, that you shall do one of the two things allowed under that law? And if so, how is that different than the minimum wage question? The answer is it's how many plaintiffs can get jurisdiction here, Your Honor. As my counsel for Ms. Marlini pointed out, in order to determine the first question you have to resolve, which is what is the particular conduct at issue here? What is it that the action is based upon in the terms of the coercion exception? So in my hypothetical, it's a decision to use Canada's minimum wage rather than Massachusetts? Your Honor, I'm getting to the jurisdictional level. I'll hold that hypothetical in reserve for a few seconds, if I might. Well, you might, but I wouldn't recommend it. Let me try it this way. The minimum wage statute is not involved here. Canada is subject to a suit that under sections 66 and 67 of the Massachusetts Workman's Compact... I agree with you. The minimum wage is not involved at all in this. But I'm trying to understand the extent of the sovereign ability that you have in mind for Canada. So I've asked a hypothetical, which is Massachusetts has a minimum wage law. Let's assume it's $10. Canada has a minimum wage law. Let's assume it's $8. And Canada makes a decision that it's going to pay Ms. Marlini only $8 an hour. Would your analysis lead us to the conclusion that we would have to say there's no jurisdiction for her to sue for a violation of the Massachusetts minimum wage law? The answer would be no, Your Honor, because there's commercial activity involved. There's no commercial activity involved here. How is that different than the present case? The difference is under sections 66 and 67, the plaintiffs have to show that Canada did not comply with the obligation of the statute to self-insure. That's the only way that they can get jurisdiction. But in the minimum wage example I gave you, to sue you, they'd have to show that you didn't comply with the state minimum wage law. That's the only way they could recover. That is true, but this statute has a separate requirement. It requires the plaintiffs to show that as a sine qua non of the statute that the Canadians are not self-insured. Actually, Canada has made a sovereign decision to apply its own comprehensive system to the consulate and to the local employees here. That sounds like we're talking about the purpose of your decision. No, it's not the purpose, Your Honor. It's the nature of the power that Canada is exercising. Canada is exercising the authority to enforce its own law. It's enforcing the sovereign law adopted by the Canadian Parliament. Suppose in this exact case, Canada forgot to file with Massachusetts its report. It was meant to comply, but it never filed the report about how it was going to self-insure. Could you be sued then? A different situation, Your Honor. Could you be sued then? The answer is no. Canada would still have sovereign authority. Right, but that shows that what your position is simply that just like any old commercial employer, you forgot to do something. And although that commercial employer would forget to do something, it's treated as a commercial decision. Somehow when Canada forgets to do it, we treat it as a non-commercial decision. I don't see why that would be. Well, there's no commercial activity involved in the decision to self-insure. That's just the company that doesn't self-insure. Well, if you look at the cases, if you look at Nelson and if you look at the other cases that are involved here, but Nelson is the primary one. What it says is that you have to work to see what is the nature of the power. The power here is sovereign. Canada is applying its own sovereign law. You also have to be familiar with... Not filing a report about one's self-insurance doesn't sound like a sovereign act in its nature. Your Honor, the difference here is that you have to look at the type of power that's being exercised. But that's not even on the purpose for their decision not to insure. Well, purpose is never... Correct. That's why it's a problem. No, Canada decides to do this not for a commercial purpose because it decides that it wants to employ its own laws. But take the example of a real commercial entity. You have an employer and it looks at the law and it says, I don't have that many employees and I've got a real safe workplace. I'm going to make money this year by going there. I'm not going to do either. And so they make that decision. You know there are a bunch of employers out there that do that. Right. I don't think we would call that a sovereign decision by the employer. We're not, Your Honor. And if Canada makes exactly the same decision, why isn't it just as commercial a decision as when another employer does it? Well, in the hypothetical that you were given, the bankrupt entity is trying to save money. That's not what Canada is trying to do here. Canada is trying to employ its own laws and... That's the purpose of why Canada acted as opposed to the fact of not having insurance. And the question is whether... If I don't know anything about why somebody did something, we're supposed to classify the action regardless of why they did it. If Saudi Arabia detains people, puts them in prison and tortures them for a commercial purpose because it will help them get trade, it's irrelevant. It's the fact of the decision being of that kind that makes it so. And the argument here is the decision not to insure, given the context in which it's arising, if I don't know anything about why you did it or who did it, that decision itself seems classifiable as inherently commercial, even though a given actor might choose to do it for a sovereign reason, because that would be the purpose rather than the nature of the decision. I think it's the reverse, Your Honor. Canada decided to do this to administer its own law to its employees. What could be a greater sovereign act than a determination that will apply to a lot of existing Canadian employees? And that would mean that your answer to Judge Carr on the minimum wage hypothetical has to be that you wouldn't have to comply with the minimum wage law if you'd like to pay the money. To come back to my difference, the difference, Your Honor, is that Canada is competing for minimum wage employees in a commercial marketplace. Here, the employees are already working at the Canadian embassy. The powers that Canada is exercising here, the nature of its authority, is to protect its own people and regulate its relationships with its employees. The purpose of that is irrelevant. The nature of it is that it's exercising a sovereign power. And then when you go to the second test... It just wants to apply... She's here. You're paying her. Yes. And then that's just like you've got to pay her $8. It happens if she was working in Canada, you'd only have to pay her $5. Do you get to say, as Canada, I'd rather apply my own laws? Again, it comes back to the test that's established by Sachs and Nelson, which is what is the nature of the power? Answer, sovereign power. What is the type of exercise in power here? There is no commercial activity whatsoever. There's no contract. There's no competing in open markets for people. This is to pay people... Hiring a secretary isn't commercial activity? Not in the determination as to whether there's sovereign immunity or not. It will apply to a determination to apply workers' comp. Your answer to the hypothetical then must be that they could pay the Canadian minimum wage instead and there'd be no jurisdiction to challenge it. No, we don't make that claim, Your Honor. What we claim is that the type of power we are exercising has no commercial aspect to it at all. Even though it's a decision that commercial entities make all the time under this? Commercial entities may decide to default on their obligation and not take out insurance, but Canada is making a considered decision that it wants to apply its own laws to its own employees because of the sovereign nature of the relationship between them. And that's a power that no commercial entity can ever apply. It can't make its own sovereign laws. It can't apply its own laws to its own employees. Can you switch to the other issue about the gravamen of the complaint? If one thought that because of the way Massachusetts law is structured here, it's a necessary condition for a claim under this statute for two things to be true. Both that there be an employee who is injured while employed and that the employer not be insured. So both things are there. If I thought, therefore, that's just what this kind of claim is, how do I decide what the true gravamen of the claim is? The answer to that question, Your Honor, is early as in the second sentence of the complaint, which is this is about proving that Canada did not comply with the Massachusetts law requiring to obtain a license. And that's a necessary portion of the claim, but it's not sufficient. Just like the employment is a necessary portion of the claim, but not sufficient. And the answer to this lies in 66 and 67 of the statute. Under 66 and 67, in order to state a claim, as the plaintiffs tried to do here, they must prove that Canada was in violation of the Massachusetts law. And that she was employed and injured. No, the focus, the essential element is that Canada is in violation. Because that's the thing that allows this case to get into court in the first place. If she's not employed and injured, it can't get into court. No, if she was simply employed and injured. But if she's not employed and injured, she can't get into court. I'm sorry, I don't understand the hypothetical. If she is not employed by the Canadian embassy? She can't sue. That's right, she can sue under 66. That means it's an essential element of the claim under 66. Well, if she's not an employee, she can't sue for a worker's compensation. That's a truism. That shows it's an essential element of her claim. No, Your Honor, because under the Massachusetts law, if an employee, when they sign up for worker's compensation, what is their right to bring a typical tort action in court? They can't do it. And that's why she had to resort to 66 and 67, which is to say you have to prove that the Canadian government failed to self-insure. That makes the failure of self-insurance the critical point here, because employment, left to itself, is not a sufficient basis for her getting into court. She has to assert the seat at Guantanamo that Canada didn't get an annual license. And that precisely is what makes this a sovereign immunity case. There's no commercial aspect to Canada deciding that. It's the 10th largest economy in the world. It's self-insuring itself. It's regulating its own relationships with its own employees. And the other side has to assert 66 and 67. That is the only basis that she can get into court, having had two bites at the apples and failed before, is that she can assert that Canada failed to register. So this case would require the American courts to look at whether the Canadian decision to self-insure, and that is not permitted by the exceptions to the Foreign Sovereign Immunities Act. No exception applies here. There's no commercial activity, and she's only in court by looking at the challenge to Canada deciding to self-insure and not seek a license from another sovereign. Thank you, counsel. Thank you. I believe you have two minutes left. Thank you. The hypothetical about the minimum wage law is not really that hypothetical. If you look at the Xi case that we cite, that's a case where the Taiwanese government said, we don't hire people over the age of 45. So these are things that actually happen. In the holding case itself, what I understand my brother's view to be is that that case would have come out differently if Canada would have had a policy that said, we don't hire women. And, you know, of course Canada is not going to have that policy, but the rule that we're going to make in this case applies to all sovereigns, and it's not that far-fetched to say that some sovereign is going to have a rule that it doesn't hire Christians or some sovereign has a rule that it doesn't hire women for particular jobs. The other point I just want to mention is the self-insurance point. I think there's a misunderstanding on Canada's part about what it means to self-insure in Massachusetts. It does not mean you get a license and then you apply your own statutory scheme. It means you stand in the shoes of a Massachusetts insurer and you provide the benefits that Massachusetts law requires and you participate in DIA hearings and so forth. We know that that's not what Canada wants to do, and in fact if you look at what happened here, the DIA found that this woman was primarily and totally disabled from work. Canada paid her benefits for a few months. She received benefits for several years from the trust fund, the fund that insures employees of uninsured employers, and those benefits only stopped because of the sorts of issues that Canada is raising about Canadian law. In other words, she would have been receiving benefits up until now under Massachusetts law if that were the law that applied. Thank you. Thank you.